IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:05-CV-34-FL

| | |
|---|---|
| VINCENTE JIMENEZ-OROZCO a/k/a ) <br> VINCENTE JIMENEZ OROSCO and ) <br> JUAN PUCHETA VELASCO, both ) <br> individually and on behalf of all other ) <br> similarly situated persons, ) <br> ) <br>        Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BAKER ROOFING COMPANY, ) <br> W. PRENTISS, III, FRANK S. ) <br> BAKER, and REBEKAH BAKER, ) <br> ) <br>        Defendants. ) | ORDER |

This case is before the court on the parties' joint motion to certify the case as a class action pursuant to Fed. R. Civ. P. 23 and a representative action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b) ("§ 216(b)").[1] (DE # 84). The motion is ripe for adjudication. For the reasons set forth below, the motion will be granted in part and denied in part.

STATEMENT OF FACTS

This action was originally brought in Wake County Superior Court in December 2004. The case was subsequently removed to this court, and the complaint was amended (see 1st Amend. Compl. (DE # 61)).

---

[1] The motion includes requests for preliminary approval of the proposed class settlement and approval of the proposed notice to the class. The court will address these portions of the joint motion by separate order.

Defendant Baker Roofing Company ("Baker") is a full-service roofing contractor with its headquarters in Raleigh and offices in Greensboro and Charlotte. (Jt. Mot., p. 1 ¶ 1).[2] The individual defendants are officers of Baker. (Id.). Plaintiffs are former employees of Baker who served as field workers on roofing crews in the Sheet Metal department assigned out of Raleigh. (Id.). Plaintiff Jimenez-Orozco ("Jimenez") worked for Baker from February to October 2004. (1st Amend. Compl. ¶ 3; Answer (DE # 63) ¶ 3). Plaintiff Juan Pucheta Velasco ("Pucheta") worked for Baker from August 2003 until at least December 2006. (Id.).

Plaintiffs' claims which are subject to the instant motion[3] fall into two groups: one group brought under various provisions of North Carolina law (collectively "North Carolina law claims") and the other brought under the FLSA. With respect to the North Carolina law claims, plaintiffs seek class certification under Fed. R. Civ. P. 23. With respect to the FLSA claims, they seek certification under § 216(b).[4]

The North Carolina law claims include, specifically, a claim under the North Carolina Wage and Hour Act ("NCWHA"), N. C. Gen. Stat. §§ 95-25.1 to 95-25.25, for unpaid compensation for time spent loading tools and materials onto trucks at Baker's offices before going to job sites and

---

[2] As discussed further below, the joint motion is based largely on stipulated facts set forth in the motion, although many of these facts can also be found elsewhere in the record. For ease of reference, the court will generally cite to the motion as the source of facts relied upon in this order.

[3] All of plaintiffs' claims are subject to the motion except their claim for a declaration of their rights. (See Jt. Mot. pp. 2-3 ¶ 3(a)-(d); Jt. Mem. (DE # 85), pp. 1-2; 1st Amend. Compl., 8th Claim for Relief). The court declines to entertain sua sponte certification with respect to that claim, and it is not covered by this order.

[4] Although the FLSA does not speak in terms of class certification as does Rule 23, many courts use such language when referring to representative actions under § 216(b) for ease of reference and uniformity. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995). The court will follow this practice in the instant case.

2

for the time then spent traveling to the job sites.[5] Plaintiffs also seek unpaid compensation due under Baker's ride time policy, which allowed employees a so-called "riding stipend" on specified terms for time spent riding to and from job sites in company trucks when such travel was particularly lengthy, pursuant to the NCWHA and North Carolina contract law.[6] Plaintiffs also seek under the NCWHA compensation for deductions made from employee paychecks for personal protective equipment ("PPE").[7] Under the FLSA, as under the NCWHA, plaintiffs seek unpaid compensation for time spent loading tools and materials onto trucks at Baker's offices before going to job sites and for the time then spent traveling to the job sites.[8]

In April 2007, while discovery on class and representative action certification issues was underway, the parties moved to stay proceedings to facilitate their mediation of the case. (DE # 79). The motion was allowed (DE # 80), the parties mediated the case in June 2007, and they reached a settlement. They subsequently filed the instant motion.

In their motion, the parties propose the same class for purposes of certification under Rule 23 with respect to their North Carolina law claims and under § 216(b) with respect to their FLSA claims. The proposed class consists of all nonexempt[9] field workers employed by Baker as employees in North Carolina at any time between January 1, 2003 and June 1, 2007 (the "class

---

[5] See 1st Amend. Compl., 1st Claim for Relief.

[6] See 1st Amend. Compl., 4th-7th Claims for Relief. The stipend ranged from $4.00 for a one-way trip of 35 to 70 miles to $12.00 for trip exceeding 110 miles. In February 2007, the stipend was changed to $0.14 per mile for one-way trips exceeding 50 miles. (Jt. Mot., p. 5 ¶ 5(e)).

[7] See 1st Amend. Compl., 2d Claim for Relief.

[8] See 1st Amend. Compl., 3rd Claim for Relief.

[9] Both the NCWHA and FLSA contain provisions exempting certain persons and work from coverage under these respective statutes. See N. C. Gen. Stat. § 95-25.14; 29 U.S.C. § 213. For purposes of this order, "nonexempt" means not exempt from coverage under the NCWHA or FLSA.

3

period") in one or more of the following departments: Sheet Metal; Single Ply; Built-Up; Coatings; Commercial Repair; Residential Repair; Waterproofing and Caulking; Shingle; Seamless Gutter; and Siding. (Jt. Mot., p. 3 ¶ 4).

## ANALYSIS

I. CERTIFICATION OF CLASS ACTION UNDER RULE 23 WITH RESPECT TO NORTH CAROLINA LAW CLAIMS

    A.    Certification Requirements

To be certified as a class action under Rule 23, an action must meet the requirements of both Fed. R. Civ. P. (a) and (b). Haywood v. Barnes, 109 F.R.D. 568, 575 (E.D.N.C. 1986). Rule 23(a) requires that a precisely defined class exist and that the proposed class representatives be members of the putative class. Id.;109 F.R.D. at 576; see East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("a class representative must be a part of the class"). In addition, the four prerequisites expressly set out in Rule 23(a) must be satisfied. Id. They are that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity requirement"); (2) there are questions of law or fact common to the class ("commonality requirement"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality requirement"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy-of-representation requirement"). Fed. R. Civ. P. 23(a).

If the prerequisites under Rule 23(a) are met, the action must then satisfy one of the three alternative sets of requirements under Rule 23(b). Id. (b). Here, the parties allege a class action maintainable under Rule 23(b)(3). It requires (1) that the questions of law or fact common to the class members predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the

4

controversy. Id. (b)(3). Rule 23(b) goes on to provide a nonexclusive list of factors pertinent to these requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Id.

It is not a requirement for certification that it encompass all issues presented in a case. Rather, Rule 23(c)(4) provides expressly that "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

A motion for class certification may appropriately be based on stipulations. See Jordan v. Lyng, 659 F. Supp. 1403, 1409-10 (E.D. Va. 1987) (citing 2 H. Newberg, Newberg on Class Actions § 7.10 (2d ed. 1985). The motion here is supported not only by the parties' stipulation to certification, but also by stipulated facts set forth in the motion and the accompanying memorandum (DE # 85). These facts are, according to the parties, based on the extensive discovery they have undertaken, including depositions; their extensive review of time sheets, payroll records, and written policies of Baker; their interviews of field workers currently and formerly employed by Baker; and other investigation regarding the facts and circumstances at issue. (Jt. Mot., pp. 3-4 ¶ 5).

      B.      Satisfaction of Rule 23(a) Prerequisites

Applying the certification prerequisites of Rule 23(a) here, the court finds that they are met. Plaintiffs have proposed a precisely defined class and the plaintiffs are members of the class.

As to the numerosity requirement of Rule 23(a)(1), the putative class is reasonably estimated by the parties to contain up to 1,000 or more members, including many who are no longer employed

5

Case 5:05-cv-00034-FL    Document 86    Filed 12/21/07    Page 5 of 13

by Baker. (Jt. Mot., p. 7 ¶ 8; Jt. Mem., p. 3). The class is therefore so numerous that joinder of all putative class members is impracticable.

The action satisfies the commonality requirement of Rule 23(a)(2) because the principal questions of law and fact at issue arise from a common nucleus of operative fact, even though the underlying facts vary among individuals. Haywood, 109 F.R.D. at 577; (see Jt. Mot., pp. 4-6, ¶ 5). As indicated, the putative class members were employed by Baker during the class period as field workers on roofing crews. Irrespective of department or base city, crew members regularly rode to job sites in company trucks. A foreman assigned to each crew was responsible for recording the time spent by crew members loading trucks before travel to the job site and which crew members, if any, were entitled to riding stipends. There were occasions when, due to faulty record keeping by foremen, putative class members were not paid for loading time or riding stipends.

With respect to PPE, during the class period Baker required each new field worker to wear a hard hat, safety glasses, and gloves, and provided this equipment to the workers. Prior to September 2006, putative class members paid for this equipment through payroll deductions, for which Baker obtained written authorization. Since September 2006, Baker has provided this equipment without charge.

As this overview of the facts indicates, there are questions of law and fact common to the members of the putative class. They include: whether the time spent by putative class members loading tools and materials before traveling to job sites was properly recorded by crew foremen; if not, whether the putative class members were paid as required by the NCWHA and the FLSA; whether the putative class members were paid the riding stipend called for by Baker's policy; if not, whether such nonpayment violated the NCWHA and North Carolina common law; whether

6

Case 5:05-cv-00034-FL   Document 86   Filed 12/21/07   Page 6 of 13

deductions were made from the putative class members' paychecks for PPE; and if so, whether such deductions violated the NCWHA and North Carolina common law.

The typicality requirement of Rule 23(a)(3) is met because the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members, notwithstanding factual distinctions between the claims of the named and unnamed putative class members and differences in the amount of damages claimed. See Haywood, 109 F.R.D. at 578; (Jt. Mot., pp. 6-7 ¶ 6). Like the other members of the putative class, Jimenez and Pucheta loaded tools and materials onto Baker trucks before traveling to job sites, their time was not properly recorded on all occasions, and, as a result, they were not always paid for all hours worked. (Jt. Mot., p. 5 ¶ 5(d)). Similarly, Jimenez and Pucheta on occasion qualified for a riding stipend which they were not paid. (Id., pp. 5-6 ¶ 5(f)). In addition, both Jimenez and Pucheta authorized deductions from their pay for PPE and deductions were made. (Id., p. 6 ¶ 5(g)). Jimenez and Pucheta assert the same claims as the other members of the putative class. Because the interests of the named plaintiffs are essentially the same as those of the unnamed putative class members and the named plaintiffs' personal stake in the outcome of the case ensures zealous pursuit of the action, the named plaintiffs can be expected to adequately protect the interests of the putative class. See Jordan, 659 F. Supp. at 1410.

The adequacy-of-representation requirement under Rule 23(a)(4) is also fulfilled. The named plaintiffs are, as indicated, both members of the proposed class. In addition, plaintiffs' counsel, Robert J. Willis, represents that the named plaintiffs have cooperated fully with him in prosecuting this action, and they have expressed their willingness to continue to do so. (Jt. Mot., pp. 7-8 ¶ 9). The record also shows that plaintiffs' counsel has the requisite experience in handling

class actions under the NCWHA and representative actions under the FLSA. (Id.). He has vigorously and competently pursued the plaintiffs' interests in this case. For the same reasons, Mr. Willis meets the requirements for appointment as class counsel under Rule 23(g).

      C.      Satisfaction of Rule 23(b)(3) Requirements

The court finds that this case also meets the requirements of Rule 23(b)(3). First, the questions of law or fact common to putative class members predominate over any questions affecting only individual members. As discussed previously, the same basic factual circumstances apply to each putative class member. The practices by Baker at issue therefore affected field workers in all departments during the class period, even though the impact of the practices varied among departments and geographically.[10] Similarly, the principal legal questions are the same with respect to each class member.

In addition, it is apparent that a class action is superior to other available methods for the fair and efficient administration of this case in accordance with Rule 23(b)(3). Among other reasons, the amount due each individual putative class member is relatively small. This fact would tend to discourage an individual from bringing a separate suit or an attorney from taking on such a suit. The further fact that many putative class members are no longer employed by Baker would also tend to discourage individual lawsuits. Moreover, judicial efficiency would be promoted by having the claims of the putative class members brought in a single action, rather than in potentially more than 1,000 actions.

---

[10] For example, field workers in the Sheet Metal, Single Ply, Built-Up, and Coatings departments performed uncompensated loading work and were not paid travel time stipends due them far more frequently than workers in the Commercial Repair, Residential Repair, Waterproofing and Caulking, Shingle, Seamless Gutter, and Siding departments. (Jt. Mot., p. 5 ¶ 5(d), p. 6 ¶ 5(f)). These practices were much more common for field workers employed in Raleigh than for workers in Greensboro or Charlotte. (Id., p. 9 ¶ 12).

8

In reaching its determination regarding the Rule 23(b)(3) requirements, the court has considered the factors listed in Rule 23(b)(3)(A)-(D). The parties' submissions indicate that there are no other lawsuits by putative class members asserting the same claims that are the subject of the instant action or any putative class members interested in bringing their own lawsuits. In addition, the court is an appropriate forum for resolution of the putative class members' claims because Baker has its headquarters in Raleigh, which is in this district; the majority of the putative class members worked from the Raleigh location; and the class consists of workers based wholly within North Carolina. The court does not anticipate difficulties in managing the class action.

The North Carolina law claims accordingly meet the requirements for certification under Rule 23, including appointment of Mr. Willis as class counsel. The portion of plaintiffs' motion seeking such certification will accordingly be allowed.

D. Subclasses

The joint motion includes a request that four subclasses be certified. (Jt. Mot. p. 8 ¶ 10). The proposed subclasses are as follows:

Subclass A. Class members in the following Raleigh-based departments: Sheet Metal; Single Ply; Built-Up; Coatings.

Subclass B. Class members in the following Raleigh-based departments: Commercial Repair; Residential Repair; Waterproofing and Caulking; Shingle; Seamless Gutter; Siding.

Subclass C. Class members in the same departments as Subclass A, based anywhere in North Carolina other than Raleigh.

Subclass D. Class members in the same departments as Subclass B, based anywhere in North Carolina other than Raleigh.

(Id.).

Rule 23(c)(5) expressly authorizes the division of a class into subclasses. Fed. R. Civ. P. 23(c)(5). The subclasses "are each treated as a class under this rule" and therefore must meet the same certification requirements applicable to a class. Id.; Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978) (citing former edition of 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1790, pp. 608-09 (3rd ed. 2005)).

The court declines to certify the proposed subclasses because they do not meet the requirements for certification. The named plaintiffs are both members of proposed subclass A, having worked in the Sheet Metal department out of Raleigh. They are not members of any of the other proposed subclasses and therefore can not serve as representatives of those subclasses. See Johnson, 581 F.2d at 532 (certification of subclass denied where proposed representative was not member of that subclass) (citing East Texas Motor Freight Sys., Inc., 431 U.S. at 403).

Moreover, the parties have not demonstrated that creation of the subclasses is superior to other available methods for fairly and efficiently adjudicating this case, as required by Rule 23(b)(3). The only apparent justification advanced for creation of the subclasses is that the parties' proposed settlement agreement provides for allocation of the settlement proceeds, in part, on the basis of membership in a particular subclass. This allocation does not, however, require the certification of the subclasses under Rule 23. Furthermore, the settlement agreement has not yet been approved by the court. The court's decision not to certify the subclasses at this time is without prejudice to the parties' renewing their motion for certification of subclasses if future circumstances warrant doing so.

II.    CERTIFICATION OF REPRESENTATIVE ACTION UNDER § 216(b) WITH RESPECT TO FLSA CLAIMS

The FLSA provides that an action for unpaid minimum wages and overtime pay may be maintained against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute goes on to state that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. There are accordingly two requirements for maintenance of a representative action under the FLSA: (1) the plaintiffs in the proposed class must be "similarly situated" and (2) they must opt in by filing their consent to sue with the court. Id.; De Luna-Guerrero v. N.C. Growers Ass'n, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). To be similarly situated to plaintiffs for purposes of § 216(b), persons "'must raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical.'" De Luna-Guerrero, 338 F. Supp.2d at 654  (quoting The Fair Labor Standards Act § 18.IV.D.3 (Ellen C. Kearns ed.)).

Ordinarily, certification of a representative action is a two-step process. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001). At the notice stage, early in a case, the court conditionally certifies the class based on the limited record before it and approves notice to putative class members of their right to opt in. Id. The final determination on certification is made later, typically after discovery, when the court has available to it substantially more information. Id. Here, the court does not find it necessary to defer final certification of the representative action because the parties have developed through discovery and investigation, and have provided to the court sufficient information on which to base a final determination. The court also notes that claims

subject to certification under § 216(b) may appropriately be brought in the same lawsuit as claims subject to certification under Rule 23 where, as here, the essential facts and issues regarding each set of claims are likely to be the same and proceedings are not likely to be rendered unduly burdensome by inclusion of both sets of claims. See Beltran-Benitez v. Sea Safari, Ltd., 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001).

As indicated, the class which the named plaintiffs seek to have certified for purposes of § 216(b) is co-extensive with the class proposed under Rule 23. (Jt. Mot., p. 3 ¶ 4). It is apparent that the persons in this class are similarly situated to Jimenez and Pucheta within the meaning of § 216(b). As discussed, like Jimenez and Pucheta, the other putative class members were field workers on roofing crews employed by Baker during the class period. As such, they were subject to the same travel and record-keeping rules and practices as Jimenez and Pucheta, and accordingly suffered from the same occasional failure to be paid for time loading and riding stipends as Jimenez and Pucheta. The members of the class therefore have the same claims as Jimenez and Pucheta for nonpayment of minimum wages or overtime relating to time loading and riding stipends.[11] Six additional field workers have already filed consents to opt into this case. (Jt. Mot., p. 2 ¶ 3(a); DE # 24, 29, 31, 37, 42, 43).

The FLSA claims asserted in this case therefore meet the requirements to proceed as a representative action under § 216(b). The portion of plaintiffs' motion seeking such certification will accordingly be allowed.

The parties also request that the same subclasses proposed with respect to the North Carolina law claims be certified with respect to the FLSA claims. The court declines to do so in this instance

---

[11] As indicated previously, the claims under the FLSA do not include those relating to PPE.

as well. Among other reasons, the parties have not shown that subclasses would facilitate the just and efficient resolution of the FLSA claims, especially in light of absence of subclasses with respect to the North Carolina law claims. The parties may renew the motion for certification of subclasses with respect to the FLSA claims should future circumstances warrant doing so.

CONCLUSION

For the foregoing reasons, IT IS ORDERED as follows:

1. The parties' joint motion for class and representative action certification is GRANTED IN PART and DENIED IN PART on the terms set forth herein.

2. The case shall proceed with respect to the North Carolina law claims as a class action under Fed. R. Civ. P. 23 and with respect to the FLSA claims as a representative action under § 216(b).

3. The class is defined as follows with respect to both plaintiffs' North Carolina law claims and FLSA claims:

> All nonexempt field workers employed by Baker Roofing Company as employees in North Carolina at any time between January 1, 2003 and June 1, 2007 in one or more of the following departments: Sheet Metal; Single Ply; Built-Up; Coatings; Commercial Repair; Residential Repair; Waterproofing and Caulking; Shingle; Seamless Gutter; and Siding.

4. No subclasses shall be certified, although the parties may renew their motion for certification of subclasses if and when they deem appropriate.

5. Class counsel shall be Robert J. Willis of the Wake County bar.

6. The motion for class certification filed on October 2, 2006 is DENIED as MOOT.

SO ORDERED, this the 20th day of December, 2007.

      /s/ Louise W. Flanagan
    LOUISE W. FLANAGAN
    Chief United States District Judge